SARTAIN, Judge.
The matter now before us is limited to the issue of the defendant-wife’s right to permanent alimony.
Plaintiff-husband instituted suit in the Family Court for the Parish of East Baton Rouge for a divorce on the grounds that he and his wife had lived separate and apart since December 16, 1965 or for a period in excess of two years. (LRS 9:301) Plaintiff alleged that six children were born issue of the marriage to the defendant; that two of the children are minors; that they are in the care of the defendant and he is willing for them to remain with her, subject to his right of reasonable visitation.
Defendant filed an answer admitting that she and her husband had lived separate and apart for a period in excess of two years. However, defendant as plaintiff in reconvention asked alimony for herself and support of the two minor children in. the combined amount of $200.00 per month payable $100.00 bi-weekly. She alleged that she was not at fault in the cause of the separation, “but that said separation was caused by the defendant in reconvention, who abandoned reconvenor and the children”.
The trial judge rendered judgment in favor of the plaintiff on the main demand decreeing a divorce between the parties. He also rendered judgment on the recon-ventional demand of the wife awarding her custody of the two minor children, the sum of $50.00 bi-weekly for the support of the minor children and the sum of $10.00 biweekly as alimony for herself.
Plaintiff has appealed from that portion of the judgment rendered against him and condemning him to pay alimony to the plaintiff in reconvention.
C.C. Article 160 provides that the wife who has not been at fault and who finds that she has insufficient means for her support may by the court be allowed out of the property and earnings of the husband alimony which shall not exceed one-third of his income. The jurisprudence is uniform to the effect that when the husband obtains a divorce on the grounds that he and his wife have lived separate and apart for a period in excess of two years the burden rests with the wife to prove (1) that she has not been at fault and (2) that she has insufficient means for her support. Haw11thorne v. Hawthorne, 214 La. 905, 39 So.2d 338; Davieson v. Trapp, 223 La. 776, 66 So.2d 804; Rogers v. Rogers, 239 La. 877, 120 So.2d 462; Chapman v. Chapman, La.App., 130 So.2d 811; Moreau v. Moreau, La. App., 142 So.2d 423; and, Gradney v. Gradney, La.App., 191 So.2d 161.
In the Moreau case it was stated: (142 So.2d 423, 426)
“The word ‘fault,’ as used in Article 160 of the LSA-Civil Code, contemplates conduct or substantial acts of commission or omission on the part of the wife, violative of her marital duties and responsibilities, which constitute a contributing or a proximate cause of the separation and continuous living apart. Felger v. Doty, 217 La. 365, 46 So.2d 300; Chapman v. Chapman, supra, and cases cited therein.”
With the above jurisprudence and codal article in mind we look to the evidence in the instant case.
*251 The parties separated as the result of an incident which occurred on December 16, 1965 in front of Kroger’s in Baton Rouge, Louisiana.
Plaintiff contends that on that day he had gone to Kroger’s for the purpose of purchasing cigarettes and that as he was leaving the store, he met a Mrs. Corning who had just finished her own shopping. Mrs. Corning was seated in the car with plaintiff when defendant arrived on the scene. Defendant went to plaintiff’s automobile and there in the presence of Mrs. Corning told plaintiff in effect to pack his bags and be departed from the matrimonial domicile by the time defendant returned. At the time of the trial some two years later defendant was asked if on December 16, 1965 when she told plaintiff to leave she really meant it and she answered in the affirmative.
Plaintiff explained that he and his wife and Mr. and Mrs. Corning were very close friends and had on numerous occasions visited in each other’s homes. Further, the two couples had gone together on a vacation just the past summer. He stated that subsequent to the vacation Mr. Corning became ill and that he and his wife and Mrs. Corning accompanied Mr. Corning to the hospital. Plaintiff asserts that when he saw Mrs. Corning leaving Kroger’s he inquired as to her husband’s health and was then informed that the doctor had told Mrs. Corning that her husband’s illness was terminal. He states that it is for this reason that Mrs. Corning was in tears at the time defendant arrived on the scene. He emphatically denied that at any time had there been anything improper concerning his contact with Mrs. Corning. The record is completely devoid of any evidence to the contrary save Mrs. Gau-treaux’s single statement that she went on the vacation “just to see what was going on”.
Mrs. Gautreaux testified that on at least three prior occasions during the existence of her marriage to plaintiff they had separated and that on each occasion it was the result of plaintiff’s conduct with other women. She stated that when she saw her husband and Mrs. Corning in her husband’s automobile (around 3:00 P.M. o'clock) in Kroger’s parking lot she had every reason to believe that because of his past conduct her husband was again engaging in an extra-marital affair.
The trial judge properly permitted testimony as to plaintiff’s alleged prior misconduct for the purpose of allowing defendant to show whether or not her suspicions were justified so as to warrant her ordering him to leave the matrimonial domicile.
Mrs. Gautreaux stated that the first separation occurred in 1945 when plaintiff went to Pascagoula, Mississippi and there lived in common law with another woman. She also stated that her husband left her in 1959 and lived in common law with another woman in Gonzales, Louisiana. A third separation occurred in 1961 but on this occasion she had no knowledge that her husband was living with any other woman. However, she stated that following their separation in 1965 and even at the time of the trial her husband was living in a common law union with another woman. She was adamant in her position that the past conduct of her husband, particularly, with reference to the 1945, 1959 and 1965 incidents completely justified her ordering him to leave the matrimonial domicile.
Plaintiff categorically denied that he ever lived common law with any person. He stated that in 1945 he and his wife separated and he went to Pascagoula, Mississippi to work in a shipyard. Both concurred that Mrs. Gautreaux subsequently accompanied him to Pascagoula. He denied that he lived with any one in a common law relationship in 1959. He further stated that at the time of the trial he was a roomer in the home of Mrs. Boatman. He stated that Mrs. Boatman also had an older son residing with her.
*252 Defendant’s testimony with respect to plaintiff’s alleged common law relationships is wholly and totally unsupported by any evidence except one statement by her daughter who stated:
“Q Well, in response — As I recall the testimony, in response to a question by Miss Attaya was, ‘Did you see your father prior to the separation?’
A. With a woman?
Q Yes. Did you see him in 1959?
A I think it was then.
Q You think it was then. All right, now what other time did you see him?
A Well, I seen — If it was then, it was a couple of times I had seen him.
Q Well, give us the dates.
A Well, I can’t remember the dates.”
The parties’ eighteen year old son was called by defendant and was asked :
“Q Have you ever had any occasion to see your father with any woman other than your mother ?
A Not that I remember.
Q You don’t remember it?
A No, ma’am.”
This, of course, is defendant’s witness and she is bound by his testimony. This witness stated that he knew of no reason why his mother and father separated. During the course of the trial and previous to the son’s testimony Mrs. Gautreaux stated “her son” knew of his father’s previous conduct and had in fact visited in the home where his father lived with another woman. While the record indicates that there were two sons of the marriage it does not reflect whether the son who testified was the one who had personal knowledge of his father’s previous misconduct. The older son was not called to testify by either of the parties.
Plaintiff stated that one of the reasons for difficulty between himself and his wife was the latter’s unfounded accusations of misconduct on his part. As this matter relates to the wife’s right to future alimony, the court must decide whether or not the defendant’s order that plaintiff depart the matrimonial domicile was legally justified. The trial judge undoubtedly determined that it was because he rendered judgment decreeing that plaintiff be cast for alimony in the amount of $10.00 by-weekly.
The testimony adduced by defendant does not support a finding that plaintiff had on previous occasions engaged in extra-marital affairs which would warrant her assuming that the circumstances of December 16, 1965 was either a continuation or a resumption of improper conduct on the part of plaintiff. In holding otherwise, we find that the trial judge erred.
Our courts have recognized that consideration must be given to a statement made by one spouse to another in the heat of an argument for arguments will occur during the course of a marriage. However, in the instant case defendant was just as determined on the day of the trial some two years later that her husband’s conduct on three previous occasions was just as improper as it was at the time of the trial itself. The accusation of marital infidelity is a grievous one and when made in a determined manner without reservation or equivocation and without reasonable or just cause is a substantial act on the part of the accuser violative of that person’s marital duties and responsibilities and constitutes a contributing cause to the separation. Defendant having made these serious charges must be accountable therefor and can only acquit herself by showing that the alleged acts of marital infidelity occurred or that she had justifiable reason to conclude or suspicion that they had occurred. Defendant’s proof in this regard falls woefully short and it cannot be said that she *253 was without fault in causing the separation by summarily ordering her husband to depart the matrimonial home and then later charging them with abandonment.
We find no abuse of discretion in the trial judge’s award of $50.00 bi-weekly for the maintenance and support of the two minor children remaining in defendant’s custody. The oldest son, though previously employed, is eighteen years of age. He does not attend school and is waiting for his draft status to be determined. On some occasions he has performed part-time labor for an uncle.
Plaintiff was earning a gross salary of $465.00 per month with a bi-weekly net take home pay of $167.00. Based on a four and one-third week month, his take home pay is $351.83. He listed personal expenses of $217.32 per month which added to the $100.00 he has been contributing regularly to the support of the children since his separation gives him a total monthly expenditure of $317.32.
The wife showed monthly expenses of $302.30. Most of the expenses itemized by her were for herself and the children. She was working and earning a gross salary of $144.00 per month with a net take home pay of $132.80. Under these circumstances the award of $50.00 bi-weekly which in effect is $108.33 per month on a four and one-third week month is reason-, able and fair.
For the above and foregoing reasons that portion of the judgment of the trial court condemning plaintiff to pay to the defendant for the maintenance and support of the two minor children in the amount of $50.00 bi-weekly is affirmed. However, that portion of the judgment of the trial court in favor of defendant, plaintiff in re-convention, ordering defendant in recon-vention, to pay alimony in the amount of $10.00 by-weekly to defendant, plaintiff in reconvention, is hereby reversed, annulled and set aside. Defendant, plaintiff in re-convention, is cast for costs of this appeal.
Affirmed in part, reversed in part.